```
            IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF TENNESSEE
                      WESTERN DIVISION
```

| | |
|---|---|
| **CLIMMIE R. WILLIAMS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     No. 07-2432 |
| | ) |
| **PAT SALMON & SONS, INC.,** | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Climmie R. Williams ("Williams") brings claims for gender-based discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. ("Title VII") against Defendant Pat Salmon & Sons, Inc. ("Salmon"). (See Compl., ECF No. 1.)  Before the Court is Salmon's motion for summary judgment.  (See Def.'s Mot. for Summ. J., ECF No. 33.)  Williams has not responded.  For the following reasons, the Court GRANTS Salmon's motion.

    **I.    Background[1]**

---

[1] All facts in this Part come from Salmon's Statement of Undisputed Material Facts.  (See ECF No. 34-1.)  Because Williams has not responded to those facts, they are deemed admitted.  See W.D. Tenn. Civ. R. 7.2(d)(3) (requiring a party opposing summary judgment to respond to the moving party's statement of undisputed facts "by affixing to the response copies of the precise portions of the record relied upon to evidence ... that the ... designated material facts are at issue"); Akines v. Shelby Cnty. Gov't, 512 F. Supp. 2d 1138, 1147-48 (W.D. Tenn. 2007) (explaining that, where the non-moving party fails to follow Local Rule 7.2(d)(3), courts in this judicial district

Salmon, a trucking company based in North Little Rock, Arkansas, initially hired Williams to work as its Memphis, Tennessee terminal temporarily. (See Statement of Undisputed Material Facts ¶¶ 1-2, ECF No. 34-1.) ("Facts") After several months, Salmon hired Williams for a regular position as an over-the-road driver in October 2005. (Id. ¶ 2.) In that capacity, she drove on "team runs" with Charles White ("White"), another over-the-road driver, based out of the Memphis terminal. (Id. ¶ 3.) During team runs, the two drivers shared a single truck that included a sleeper berth and, while one drove, the other rested in the berth to comply with Department of Transportation regulations. (Id. ¶ 4.)

When Salmon hired Williams, she received a copy of Salmon's Employee Handbook (the "Handbook"), which included a list of terminable offenses. (Id. ¶ 5; see also Ex. 1, Attachment A, ECF No. 34-2.) According to the Handbook, "[v]erbal or physical abuse of any co-worker" could result in termination, even for a first offense. (Facts ¶ 7.) The Handbook also included Salmon's sexual harassment policy and the procedure for reporting possible harassment. (Id. ¶ 5.) The Handbook prohibited sexual harassment and permitted an employee to report possible harassment, in person or anonymously, to her direct

---

"consider the [moving party's] statement of undisputed material facts as having been admitted").

2

supervisor or to a corporate general manager. (Id. ¶ 6.) Williams signed an acknowledgment that she had received, read, and understood the Handbook. (Id. ¶¶ 8-9.)

On December 30, 2005, Salmon received a complaint from White, alleging that Williams had threatened to kill him during a team run. (See id. ¶ 15.) Duane Wilbanks ("Wilbanks"), manager of Salmon's Memphis terminal, met with Williams that day to discuss the complaint. (Id. ¶¶ 16, 42; Ex. 1 ¶ 1, ECF No. 34-2.) During that meeting, Williams admitted that she had threatened White but also claimed that White had been sexually harassing her. (Facts ¶¶ 17, 22, 42.) Although Wilbanks otherwise would have immediately terminated Williams' employment based on her admitted threat to White, he suspended her to investigate her complaint about sexual harassment. (Id. ¶¶ 22-23, 30.)

After the meeting with Wilbanks, but before being terminated, Williams submitted a written statement about her sexual harassment claims. (See Ex. A, Attachments B, ECF No. 34-2.) In that statement, she stated, "I was asked if I had threatened to kill Mr. White if I had to stay in Mobile with him? I responded to them yes, but only to protect myself from them." (Id. ¶¶ 25, 44.) Williams also stated that she had told her sister about White's alleged harassment, but that she had not mentioned his conduct to anyone at Salmon before the

3

December 30, 2005 meeting with Wilbanks. (Id. ¶ 26, 45.) According to the statement, she had approached Robert Wilson ("Wilson"), assistant manager at the Memphis terminal, about moving to a different route. (Id.) She stated that, in response to her request, "he asked me to hold on. I said OK. I did not tell [Wilson] the severity of my growing situation." (Id.) When requesting a transfer from Wilson, Williams did not mention White or sexual harassment. (See id. ¶ 48.)

After his meeting with Williams, Wilbanks investigated her complaint. (Id. ¶ 27.) White denied the allegations. (Id. ¶ 67.) According to Williams, all of the alleged sexual harassment occurred when she was alone in the truck with White and nothing occurred in the presence of others. (Id. ¶¶ 64-65.) When Wilbanks was unable to corroborate Williams' allegations, he terminated her employment on January 12, 2006. (Id. ¶¶ 27-28; see Ex. 1, Attachment E, ECF No. 34-2.)

Since her termination, Williams has discussed her employment at and termination from Salmon in several situations and provided different accounts. Williams told her counselor that she had threatened to kill White. (Facts ¶ 57.) She also told her counselor that White had harassed her "mostly verbally but some minimal touching was involved" and explained that she did not report White's conduct before December 30, 2005 because she wanted to "protect his wife." (Id. ¶¶ 19, 20-21.)

4

In proceedings before the Equal Employment Opportunity Commission ("EEOC"), Williams admitted that she had threatened to kill White and that she had not complained to Salmon about his sexual advances toward her before December 30, 2005. (Id. ¶¶ 46-48, 50-51.) The EEOC eventually issued a "no cause determination" letter on March 22, 2007, explaining that Williams had threatened White with bodily harm, had not informed Salmon about his sexual advances, and had identified no witnesses in support of her claim. (Id. ¶¶ 53-54.) The EEOC dismissed Williams' charges and notified her of her right to sue. (See Dismissal and Notice of Rights, ECF No. 34-7.)

During a hearing for unemployment benefits before the Tennessee Department of Labor and Workforce Development Appeal Tribunal ("Tennessee Department of Labor") on March 6, 2009, Williams testified that she had not threatened to kill White. (Id. ¶¶ 35, 55.) She admitted, however, that she had not informed Salmon of White's alleged harassment before the December 30, 2005 meeting with Wilbanks. (Id. ¶ 56.)

During this litigation, Williams has offered different accounts. In her Complaint, Williams admits threatening White but also alleges, for the first time, that she did so only after he threatened to rape her. (Id. ¶ 58; see also Compl. ¶ 13.) In contrast, during her August 10, 2010 deposition, Williams testified that she had only told White that she "would get him"

5

and denied threatening to kill him.  (See id. ¶¶ 41, 59.)  She also claimed, for the first time, that Salmon had given White permission to sexually harass her while they were alone in the truck together.  (See id. ¶ 64.)

During her deposition, Williams also claimed, for the first time, that she had provided Wilbanks with a letter about White's alleged harassment in November 2005.  (Id. ¶ 60.)  According to Williams, when she gave the letter to Wilbanks on November 8, 2005, he made a copy for her, and she returned to the truck for her team run.  (Id. ¶ 62.)  She testified that Wilbanks then called White, who was in the truck with Williams, and instructed him to take the letter and destroy it.  (Id.)  After overhearing those instructions, Williams testified that she ripped the letter from White's hands, put it in a stamped envelope that she had in the truck, and mailed it to a friend named Ellis Johnson, who had since died.  (Id.)  In the same deposition, however, Williams also stated that she had not mentioned White's behavior to Wilbanks before December 30, 2005, stating that "a black woman my age does not just approach a man and say, okay, this man said that you told him to [sexually harass] me."  (Id. ¶ 63.)

During the deposition, Williams attempted to explain the differences between her testimony and her prior statements in other settings.  In explaining why she had not mentioned the

6

letter before, Williams testified that, before her August 10, 2010 deposition, she had not remembered the letter, that she had no copy of it, and that she did not want to get Wilbanks into trouble. (Id. ¶ 61.) Williams testified that her sister had typed the written statement she submitted to Salmon and had "changed things," creating inconsistencies between that statement and her deposition testimony. (Id. ¶ 41.) In explaining her prior statements to the EEOC, Williams initially denied that she had admitted to the EEOC that she had threatened White but later stated that she did not remember why she had told the EEOC that fact. (Id. ¶¶ 49, 52.) Finally, she testified that the hearing officer at the Tennessee Department of Labor had turned off the tape recorder during the hearing and told her not to discuss certain facts. (Id.) At the deposition, however, she refused to testify about what she had said at that hearing that had not been recorded. (Id. ¶ 33.)

## II.  Jurisdiction

Because Williams' claims arise under Title VII, this Court has federal question jurisdiction. See 28 U.S.C. §§ 1331, 1343(a)(4); Harper v. AutoAlliance Int'l, 392 F.3d 195, 201 (6th Cir. 2004) (stating that Title VII claims arise under federal law).

## III. Standard of Review

7

Under Federal Rule of Civil Procedure 56, the party moving for summary judgment "bears the burden of clearly and convincingly establishing the nonexistence of any genuine issue of material fact, and the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986). The moving party can meet this burden by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of her case. See Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

When confronted with a properly supported motion for summary judgment, the respondent must set forth specific facts showing that there is a genuine issue for trial. A genuine issue for trial exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). One may not oppose a properly supported summary judgment motion by mere reliance on the pleadings. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, the nonmovant must present "concrete evidence supporting [her]

8

claims." Cloverdale Equip. Co. v. Simon Aerials, Inc., 869 F.2d 934, 937 (6th Cir. 1989) (citations omitted). The district court does not have the duty to search the record for such evidence. See InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). The nonmovant has the duty to point out specific evidence in the record that would be sufficient to justify a jury decision in her favor. See id. "Summary judgment is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (internal quotation marks and citations omitted).

**IV. Analysis**

Williams alleges that Salmon violated Title VII by subjecting her to sexual harassment that created a hostile work environment and by terminating her employment in retaliation for her complaints about that harassment. (Compl. ¶ 17.)

**A. Hostile Work Environment**

To establish a prima facie case of hostile work environment based on sexual harassment, a plaintiff must show that 1) she was a member of a protected class, 2) she experienced unwelcome sexual harassment, 3) the harassment was "based on sex," 4) "the harassment unreasonably interfered with her work performance by

9

creating a hostile, offensive, or intimidating work environment," and 5) there is a basis for employer liability. See Thornton v. Federal Express Corp., 530 F.3d 451, 455 (6th Cir. 2008) (citing Hafford v. Seidner, 183 F.3d 506, 512 (6th Cir. 1999)). The fifth element ensures that employers are not held liable for all sexual harassment perpetrated by their employees. See Gallagher v. C.H. Robinson Worldwide, Inc., 567 F.3d 263, 274 (6th Cir. 2009) ("The Supreme Court has ruled that employers are not automatically liable for sexual harassment perpetrated by their employees." (quoting Petrosino v. Bell Atlantic, 385 F.3d 210, 225 (6th Cir. 2004))).

"Where an employee is the victim of sexual harassment, including harassment in the form of a hostile work environment, by non-supervisory co-workers, an employer's vicarious liability depends on the plaintiff showing that the employer knew (or reasonably should have known) about the harassment but failed to take appropriate remedial action." Id. The employer is vicariously liable for co-worker harassment only if 1) it knew of the harassment or should have known of the harassment and 2) it failed to take appropriate remedial action. See id. at 276 (citing Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 338 (6th Cir. 2008); McCombs v. Meijer, Inc., 395 F.3d 346, 353 (6th Cir. 2005)). Where the employer responds to an employee's allegations of sexual harassment, the employer is liable only if

10

the response "manifests unreasonableness in light of the facts the employer knew or should have known." Hawkins, 517 F.3d at 340 (citing Blankenship v. Parke Care Ctrs. Inc., 123 F.3d 868, 873 (6th Cir. 1997)).

Because White allegedly sexually harassed Williams only when the two were alone in the truck, Salmon had no reason to know of his conduct until Williams reported it. (See Facts ¶ 64.) The record before the Court demonstrates that, before Wilbanks confronted Williams about her threat to White on December 30, 2005, Williams had never reported White's alleged harassment to anyone at Salmon. (See id. ¶¶ 26, 46.) In proceedings before the EEOC and the Tennessee Department of Labor, Williams testified that she had not complained about White's harassment to anyone at Salmon, much less her superiors. (See id. ¶¶ 47-48, 56.) She also told her counselor that she had not reported White's conduct to anyone at Salmon. (See id. ¶ 21.)

That Williams testified in her deposition that she had given a letter describing White's harassment to Wilbanks in November 2005 does not create a genuine issue of material fact about whether Salmon had knowledge of her allegations before her meeting with Wilbanks on December 30, 2005. "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn

11

statement . . . without explaining the contradiction or attempting to resolve the disparity." Hanson v. City of Fairview Park, 349 F. App'x 70, 74 (6th Cir. 2009) (quoting Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999)); see Barrett v. Whirlpool Corp., 556 F.3d 502, 517 (6th Cir. 2009) (citing Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir.1986)). The party's explanation for the contradiction must be "persuasive." Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 908 (6th Cir. 2006) (citations omitted); Carnette v. Exide Technologies, Inc., No. 2:07-CV-239, 2009 WL 1586783, at *6 (E.D. Tenn. June 4, 2009) ("To defeat summary judgment, that explanation must be sufficient to warrant a reasonable juror's acceptance.") (citations omitted).

In explaining why, in prior sworn testimony before the EEOC and the Tennessee Department of Labor, she had not mentioned the November 2005 letter to Wilbanks, Williams testified that she had not remembered the letter, that she had no copy of it, and that she did not want to cause trouble for Wilbanks. (Id. ¶ 61.) That explanation would not persuade a reasonable jury. See Aerel, S.R.L., 448 F.3d at 908; Carnette, 2009 WL 1586783, at *6. A reasonable jury would not believe that, when discussing whether she had previously reported allegations of sexual harassment to her superiors in two separate proceedings,

12

Williams simply forgot about a letter to Wilbanks in which she detailed that very harassment. (See Facts ¶ 61.)

Williams' explanation is even less persuasive given the dramatic scenario she recounted in her deposition. Williams testified that, after she had delivered the letter to Wilbanks, he ordered White destroy it but, before he could do so, Williams ripped it from White's hands and mailed it to a now-deceased friend. (See id. ¶¶ 61-63.) Those details are memorable. A reasonable jury would not believe that Williams simply forgot them between November 2005 and November 10, 2010.

Nor can Williams' request for a change in her route be construed as providing Salmon with knowledge of White's alleged harassment before December 30, 2005. An employee may establish a factual question about whether an employer had constructive knowledge of co-worker harassment when an employee's transfer request is combined with additional facts. See Hawkins, 517 F.3d at 340. In Hawkins, there was a genuine issue of fact about whether an employer had knowledge of co-worker harassment because an employee's co-worker had engaged in past acts of harassment and the employee requested a transfer because the co-worker had been making her life "unbearable." See id. at 339-40. Nothing in the record before the Court suggests that Williams mentioned White or sexual harassment when requesting a transfer, and nothing suggests that White had engaged in prior

13

acts of harassment. (See Facts ¶¶ 26, 48.) The absence of any reference to White or sexual harassment in Williams' request comports with her statement to her counselor that she wanted to protect White's wife from harm. (See id. ¶ 20.) Williams' transfer request provided no reason for Salmon to believe that she was experiencing harassment.

The only issue is whether, once Salmon had notice of Williams' allegations on December 30, 2005, it responded reasonably. See Hawkins, 517 F.3d at 340. Where the employer responds to an employee's allegations of sexual harassment, the employer is liable only if the response "manifests unreasonableness in light of the facts the employer knew or should have known." Id. (citing Blankenship v. Parke Care Ctrs. Inc., 123 F.3d 868, 873 (6th Cir. 1997)). To establish liability, an employee must show that her employer acted negligently in responding to the alleged harassment. See Mullins v. Goodyear Tire & Rubber Co., 291 F. App'x 744, 747 (6th Cir. 2008) (citing Fenton v. HiSAN, Inc., 174 F.3d 827, 829 (6th Cir. 1999)). An employer's response need not be perfect. Id. at 758. The question is whether "a reasonable jury could find that [the employer's] response 'exhibited such indifference as to indicate an attitude of permissiveness that amounts to discrimination.'" Id. (quoting McCombs, 395 F.3d at 353).

14

Salmon acted reasonably. Although Wilbanks testified that he otherwise would have automatically terminated Williams' employment because she admitted that she had threatened White, because she alleged that White had been sexually harassing her before the threat, he suspended her pending an investigation. (Facts ¶¶ 22-23, 30.) Wilbanks investigated the allegations. (Id. ¶ 27.) When he could not corroborate them, he terminated White's employment. (Id. ¶ 28.) Nothing in the record suggests that Wilbanks ignored corroborating witness statements or otherwise failed to conduct a proper investigation of William's allegations. Cf. Mullins, 291 F. App'x at 758 (concluding that there was a factual question about the reasonableness of an employer's response where it had ignored corroborating witnesses and scrutinzed an employee's work record). After learning of White's alleged sexual harassment on December 30, 2005, Salmon responded reasonably.

Even assuming that White sexually harassed Williams, she has not met her burden of introducing evidence showing a basis to hold Salmon liable for that harassment. See Gallagher, 567 F.3d at 274; Thornton, 530 F.3d at 455. For that reason, she has failed to establish a prima facie case of hostile work environment based on sexual harassment, and summary judgment on that claim is appropriate. See Balding-Margolis v. Cleveland Arcade, 352 F. App'x 35, 44 (6th Cir. 2009).

15

**B. Retaliation**

To establish a prima facie case of retaliation in violation of Title VII, a plaintiff must show that 1) she engaged in an activity protected by Title VII, 2) the defendant knew of plaintiff's activity, 3) after the plaintiff's protected activity, the defendant took an employment action adverse to plaintiff, and 4) there was a causal connection between the protected activity and the adverse employment action. Arendale v. City of Memphis, 519 F.3d 587, 606 (6th Cir. 2008) (citing Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)). "To establish the causal connection required in the fourth prong, a plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not [engaged in protected activity]." Nguyen, 229 F.3d at 563 (citations omitted). A plaintiff must raise an inference that her "protected activity was the likely reason for the adverse employment action." Simpson v. Vanderbilt Univ., 359 F. App'x 562, 571 (6th Cir. 2009) (quoting Zanders v. Nat'l R.R. Passenger Corp., 898 F.2d 1127, 1135 (6th Cir. 1990)).

The record before the Court demonstrates that Williams' complaint about White's sexual harassment was a protected activity and that Salmon's termination of her employment was an adverse employment action, but it does not demonstrate a causal

16

connection between them. Williams first complained about the alleged harassment when Wilbanks met with her to discuss her threat to kill White on December 30, 2005. (See Facts ¶¶ 21, 26, 46-48, 56.)

That Salmon terminated her employment on January 12, 2006, shortly after it received her complaint about White's alleged sexual harassment on December 30, 2005, does not show a causal connection. A causal connection can be shown through an employer's knowledge of the protected activity coupled with closeness in time, but "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." Imwalle v. Reliance Med. Prods., 515 F.3d 531, 550 (6th Cir. 2008) (quoting Nguyen, 229 F.3d at 566)). There is no other evidence in the record that shows a possible causal connection between Salmon's learning of Williams' complaint and Salmon's terminating her employment.

Even if the Court were to conclude that Williams could establish a prima facie case of retaliation, her claim would fail because Salmon has proffered a legitimate, non-discriminatory reason for its termination of her employment. See Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009). If a plaintiff establishes a prima facie case, the burden of production shifts to the defendant, which must offer a non-discriminatory reason for the adverse employment action.

17

Ladd, 552 F.3d 495, 502 (6th Cir. 2009) (citing Dixon v. Gonzales, 481 F.3d 324, 333 (6th Cir. 2007)). If the defendant meets that burden, the plaintiff must then demonstrate that the proferred reason was mere pretext. Id.

According to the Handbook, verbal abuse of any co-worker constitutes a terminable offense. (See Facts ¶ 5.) The record demonstrates that, in statements to Wilbanks and her counselor and in proceedings before the EEOC, Williams admitted that she had threatened to kill White. (See id. ¶¶ 25, 46-47, 57.) In her Complaint, Williams also admitted that fact. (Id. ¶ 58; see also Compl. ¶ 13.) Although Williams denied that she had threatened to kill White in her deposition and asserted that she had instead threatened to "get him," (see id. ¶¶ 41, 59), she cannot create question of fact by denying facts admitted in her Complaint. See Hughes v. Vanderbilt Univ., 215 F.3d 543, 549 (6th Cir. 2000) (explaining that a plaintiff was bound by admissions in her pleadings and could not create a factual issue by filing a conflicting affidavit); Bluegrass Hosiery, Inc. v. Speizman Indus., Inc., 214 F.3d 770, 772 n.1 (6th Cir. 2000) (referring to a complaint as a pleading).

The record before the Court demonstrates that, based on her threats alone, Wilbanks would have terminated Williams' employment for violation of the Handbook's prohibition of verbal abuse of any co-worker. (See id. ¶ 23.) That constitutes a

legitimate, non-discriminatory reason for Williams' termination. Nothing in the record suggests that reason is pretextual.

Williams' retaliation claim fails for two reasons. She has failed to establish a causal connection between her complaints about sexual harassment and Salmon's termination of her employment and therefore has failed to establish a prima facie case. Even if she had established a prima facie case, Salmon has proffered a legitimate, non-discriminatory reason for terminating her employment, which Williams has not shown is pretextual. For those reasons, summary judgment on Williams' retaliation claim is appropriate.

### V. Conclusion

For the foregoing reasons, the Court GRANTS Salmon's motion for summary judgment and DISMISSES Williams' gender-based discrimination claims for hostile work environment and retaliation.

So ordered this 3d day of March, 2011.

                                              s/ Samuel H. Mays, Jr.
                                              SAMUEL H. MAYS, JR
                                              UNITED STATES DISTRICT JUDGE